# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| PATRICIA KAR, individually and as administrator of the ESTATE OF ARIES KARR, and as mother and guardian of J.K. and A.K. minor children, <br><br> Plaintiff, <br><br> v. <br><br> SWIFT TRANSPORTATION CO. OF ARIZONA LLC, SWIFT TRANSPORTATION SERVICES LLC, MOHAVE TRANSPORTATION INS. CO. and RED ROCK RISK RETENTION GROUP INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) Civil Action No. 2:15-CV-383 JVB ) ) ) ) ) ) ) ) ) |

**OPINION AND ORDER**

This matter is before the Court on Defendants' motion for summary judgment (DE 33) and Plaintiff's motion for summary judgment (DE 36).[1] This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiff and all Defendants.

**A.      Summary Judgment Standard**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1]The Court notes that Plaintiff, in an apparent attempt to conceal the fact that her various briefs would otherwise exceed the page limits provided for in Northern District of Indiana Local Rule 7-1(e)(1), used 11.5-point type, thereby violating Local Rule 5-4, which requires at least 12-point type. These rules are there for a reason: to make briefs readable and focused.

law." Fed. R. Civ. P. 56(a). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir.1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id*. at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Mindful of these standards, the court now turns to the factual basis for the parties' motions and then to their substance.

**B.     Background**

Patricia Kar brings this suit on her own behalf, as administrator of the estate of Aries Kar, and as the mother and guardian of his two minor children. Aries Kar died in a traffic accident on January 3, 2015, in El Paso, Texas. At the time of the accident, he was driving a tractor-trailer owned by his employer, Swift Transportation Co. of Arizona LLC ("Swift Transportation"), one

2

of four defendants in this case. The tractor-trailer was registered to Swift Transportation in the state of Indiana. Plaintiff has also sued Mohave Transportation Insurance Company ("Mohave"), Red Rock Risk Retention Group ("Red Rock"), and Swift Transportation Services LLC ("STS"). All of the defendants are wholly owned subsidiaries of Swift Transportation Company, which is not a defendant in this case. Mohave is a reinsurer and the claims administrator for the insurance provided to Swift Transportation Company through Red Rock, which is a captive insurer providing insurance to Swift Transportation Company and its subsidiaries. STS is a limited liability company that owns and operates vehicles, but it did not own the tractor-trailer Aries Kar was driving at the time of the accident. Moreover, STS has never employed him and he was not driving the tractor-trailer under STS's operating authority at the time of the accident.

Plaintiff asserts that the accident that claimed Aries Kar's life was the fault of an underinsured motorist and that the insurance policy Defendants maintained on the tractor-trailer provides underinsured motorist coverage for the resulting damages, which greatly exceed the limits of the at-fault driver's insurance. Defendants insist that Swift Transportation Company validly rejected underinsured motorist coverage for all its subsidiaries in accordance with Indiana law, while Plaintiff argues that the purported rejection was not in compliance with Indiana law.

**C.     Facts**

Swift Transportation Company is a nationwide trucking company, operating in forty-eight states. In 2010, it instituted a new liability insurance regime. To gain favorable income tax

treatment, it created Red Rock as a wholly owned subsidiary to provide liability insurance for itself and all its subsidiary organizations. Red Rock has a board of directors but no employees. In 2010 Red Rock issued a commercial automobile liability policy bearing Policy No. 136818-10, with an effective date of February 1, 2010.

On that same date, Virginia Henkels, Swift Transportation Company's CFO, signed a document entitled "Indiana Notice Uninsured/Underinsured Motorists Coverage " (the "Indiana Rejection Document"). (DE 35-4.) The Indiana Rejection Document included the 2010 policy number and recited that Indiana law requires insurers to provide uninsured and underinsured motorists coverage, but that the named insured can reject the coverage. Under the heading "Coverage Selection," Henkels checked a box stating she agreed "that Underinsured and Underinsured Motorists Bodily Injury and Uninsured Motorists Property Damage coverage are hereby rejected in their entirety." (*Id.* at 1.) Just above the signature line, the Indiana Rejection Document contained the following language:

> I understand and agree that the choices indicated above will apply to this policy and all future renewals, reinstatements or replacements of this policy unless a written request for a change is received and approved by the Company.

(*Id.* at 2.) In addition to the date signed, an effective date of February 1, 2010, appears on the document.

There was a commercial automobile liability policy in place with Red Rock as the insurer and Swift Transportation Company as the named insured each year from 2010 through 2015. Each policy bore the number RRG136818 with a hyphen after the final eight followed by the year of the policy, so that the policy for 2015 was assigned the number RRG136818-15. Each year the policy would be put together by Swift Transportation Company at a meeting with its

4

broker, Aon. Aon would then compile all the forms and endorsements that make up the policy and keep the original of the policy.

Included with the documents comprising the 2010 policy is a stack of uninsured and underinsured motorist coverage/rejection forms for some thirty-three states, including the Indiana Rejection Document. The first form in the stack, applicable to the state of Alaska, is stamped "RECEIVED Mar 4 2010 Aon Risk Services, SW." (DE 37-4.) The Indiana Rejection Document is not mentioned in any table or schedule of the 2010 policy. After 2010, Red Rock did not again offer Swift Transportation Company underinsured motorist coverage and Swift Transportation Company did not sign a document similar to the Indiana Rejection Document again. The 2015 policy was in force when Aries Kar's accident occurred. The 2015 policy doesn't refer to the Indiana Rejection Document.

Both the 2010 and the 2015 policy contain the following language:

**B. Changes**
This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

(DE 37-7 and DE 35-3 at 11.)

In 2010, Indiana Code § 27-7-5-2 (b) provided that a named insured has the right to reject uninsured and underinsured motorist coverage in writing and that once the insured has rejected such coverage, the insurer need not offer it in or supplemental to a renewal or replacement policy issued to the same insured by the same insurer. The statute further provided that renewals of policies that have undergone interim policy endorsement or amendment do not constitute new policies for which the insurer is required to provide uninsured and underinsured motorist

5

coverage. Moreover, a rejection of coverage by a named insured is a rejection on behalf of all other named insureds, other insureds, and all others entitled to coverage under the policy. Section 27-7-5-2(c), which was added to the statute effective July 1, 2009, ( *see* 2009 Ind. Legis. Serv. P.L. 124-2009 (S.E.A. 142) (West)) requires that a rejection under § 27-7-5-2(b) must specify what coverage the named insured is rejecting and the date on which the rejection is effective.

**D.     Discussion**

The Court's task is to decide whether Swift Transportation Company's 2010 rejection of Indiana underinsured motorist coverage was in compliance with law and applies to the 2015 Policy. In a diversity case a federal district court must attempt to predict how the highest court in the state whose law applies would decide the case. The parties agree that Indiana law applies here.

The parties first dispute is whether Aries Kar is an insured under the policies such that any ambiguities in the policies must be construed liberally in his favor. The policies unquestionably include Aries Kar as an insured. According to the policies, with certain exceptions not relevant here, an insured is anyone using a covered vehicle with the permission of the named insured (DE 35-3 at 13, DE 35-2 at 22). Defendants have admitted that Aries Kar was driving a Swift Transportation tractor-trailer in the course and scope of his employment when the accident occurred. Defendants have advanced no argument that he was not driving a covered vehicle or that he lacked permission.

The cases Defendants rely on for their assertion that the policies should be construed

from a neutral stance, *Indiana Lumbermens Mutual Insurance Company v. Statesman Insurance Company*, 291 N.E.2d 897 (Ind. 1973), and *Burkett v. American Family Insurance Group*, 737 N.E.2d 447 (Ind. Ct. App. 2000), are factually distinguishable and not applicable to the present circumstances. They both involved plaintiffs who were clearly not insureds under the policies at issue.

Plaintiff relies on the Indiana Court of Appeals' decision in *Liberty Mutual Fire Insurance Company v. Beatty*, 870 N.E.2d 546, 551 (Ind. Ct. App. 2007), for the proposition that to exclude underinsured motorist coverage, an insurance company must secure "the written waiver of coverage required under the statute" and include "the waiver within the policy prior to the commencement of coverage. . .." Plaintiff insists that because the Indiana Rejection Document was not listed as an endorsement to either the 2010 or the 2015 policy, it was not included within the policy prior to the commencement of coverage and is therefore ineffective.

In *Beatty*, the plaintiffs had an automobile liability policy and an umbrella policy with Liberty Mutual. Several years after they bought the umbrella policy, and during the policy year, Liberty Mutual sent them a form offering uninsured and underinsured motorist bodily injury coverage with stated premium charges for various levels of coverage. There was also a line on the form that read "I reject UM/UIM coverage." Mr. Beatty put an *X* next to this line and returned the form to Liberty Mutual. *Id.* at 548.

When he was severely injured by an uninsured motorist in 2005, Mr. Beatty made a claim under the umbrella policy that the insurance company denied. The Indiana Court of Appeals affirmed the trial court's grant of summary judgment in favor of the Beattys. The court held that the umbrella policy did afford uninsured motorist coverage because the document Mr. Beatty

7

signed was not an effective rejection. The court first noted that Indiana Code § 27-7-5-2, which requires insurance companies to provide uninsured and underinsured motorist coverage, granted implied uninsured and underinsured motorist coverage in existing policies that did not expressly provide such coverage. *Id.* at 549. The court found the purported rejection ambiguous, as it could reasonably be construed to effect an immediate cancellation of uninsured and underinsured motorist coverage that was already included in the existing policy. Alternatively it could be interpreted as a rejection of that coverage at the time of the next renewal or an offer for uninsured and underinsured motorist coverage in addition to the uninsured and underinsured motorist coverage the Beattys already had. *Id.* at 551. The court observed that, if the purported rejection was intended to eliminate all uninsured and underinsured coverage under the policy, Liberty Mutual had offered no consideration for the removal of the existing coverage and that Liberty Mutual did not change the express language of the policy when the rejection form was signed or when the policy was renewed. In this context the court stated that to exclude uninsured and underinsured motorist coverage, Liberty Mutual should have obtained the written waiver of coverage and "included the waiver within the policy before coverage began" or, to remove the coverage during the policy's term, it should have proposed such a modification and offered to reduce the premium to reflect the removal. *Id.*

*Beatty* is of little assistance in answering the question before the Court in this case because it does not involve a written rejection of uninsured and underinsured motorist coverage that was signed and, according to its terms, became effective on the same date as the commencement date of the liability policy that Plaintiff insists provides such coverage. Also, the fact that the court noted that the insurance company did not change the "express language of the

8

Beattys' policy" suggests that the policy expressly provided for underinsured motorist coverage, so that an endorsement to the policy to eliminate the coverage would be needed to avoid confusion. Moreover, it concerned a purported rejection that was executed long before Indiana Code § 27-7-5-2 was amended to add paragraph (c), which sets out what a rejection must contain.

Defendants rely on *Employers Insurance of Wausau v. Stopher*, 155 F.3d 892 (7th Cir. 1998), to support their claim that Swift Transportation Company validly rejected uninsured and underinsured motorist coverage. That case presented the question of when a rejection of uninsured and underinsured motorist coverage became effective under Indiana law. Wausau had issued an insurance policy to Nucor on January 1, 1992. On July 6, 1992, Nucor signed a form rejecting uninsured and underinsured motorist coverage in Indiana. On September 28, 1992, Stopher, an employee of a Nucor affiliated corporation, driving a vehicle owned by another of Nucor's affiliated corporations, was involved in an accident in Indiana with an underinsured motorist. *Id.* at 983–84. On October 7, 1992, Wausau issued a change endorsement removing the Indiana uninsured and underinsured motorist coverage, purporting to be effective as of January 1, 1992. On the basis of a policy provision requiring a change endorsement in order to amend or waive the policy's terms, the trial court had held that the rejection was not effective until Wausau issued the change endorsement. *Id.* at 895.

The Seventh Circuit reversed, holding that despite the policy provision requiring a change endorsement, the rejection constituted a cancellation of part of the policy coverage that was effective on the date it was signed, without the necessity of a change endorsement. The court noted that Indiana Code § 27-7-5-2 did not then specify when an insurer's rejection of

9

uninsured and underinsured motorist coverage became effective, but found that Nucor should not lose the right of rejection afforded by the statute simply because Wausau did not promptly issue a change endorsement. *Id.* at 897–98. As previously noted, since 2009, § 27-7-5-2 (c) has provided that the rejection must specify the date on which it is effective.

The Court does not find *Stopher* helpful in deciding this case either. It was the Seventh Circuit's best effort to predict how the Indiana Supreme Court would resolve the dispute before it, at a time when the law regarding rejection of uninsured and underinsured motorist coverage was less well developed than it is now.

The Court is persuaded by the addition of § 27-7-5-2(c) to the statute that the only requirements for a valid rejection of underinsured motorist coverage in Indiana is that the rejection state the coverage that is being rejected and the date on which the rejection is effective. The Indiana Rejection Document satisfies these requirements. It makes the insured the master of the effective date. The statute does not require that the rejection be included as an endorsement to the policy or made a part of the policy in some other way. Plaintiff has not directed the Court to any language in the policy that would lead an insured to believe the policy included Indiana underinsured motorist coverage if not excluded by an endorsement.

The evidence shows that the Indiana Rejection Document was signed and made effective on the date the 2010 policy was issued. Accordingly it was a valid rejection of underinsured motorist coverage in Indiana.

Plaintiff maintains that, even if the 2010 rejection was valid, it does not apply to the 2015 policy because the 2015 policy is a brand new policy and not a renewal or replacement policy. The Court disagrees. Indiana Code § 27-7-5-2(b) provides:

> Following rejection of either or both uninsured motorist coverage or underinsured motorist coverage, unless later requested in writing, the insurer need not offer uninsured motorist coverage or underinsured motorist coverage in or supplemental to a **renewal or replacement policy issued to the same insured by the same insurer** . . .. Renewals of policies issued or delivered in this state which have undergone interim policy endorsement or amendment do not constitute newly issued or delivered polices for which the insurer is required to provide the coverages described in this section.

Moreover, as noted above, the Indiana Rejection Document itself sets out the insured's agreement that the choices made in the Indiana Rejection Document would apply to the 2010 policy and all future renewals, reinstatements, or replacements of the policy unless a written request for a change is received and approved by the Company. There is no evidence that Swift Transportation Company ever made such a request.

Each policy issued after the 2010 policy, including the 2015 policy, is a renewal of the preceding year's policy. The policies were issued by the same insurer to the same insured, bore the same policy number save for the indication of the year, and were commercial auto policies covering essentially the same risks. Because the 2015 policy was a renewal policy, Red Rock did not need to again offer underinsured motorist coverage and the 2010 rejection, by its terms, applied to the 2015 policy.

**E.     Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment (DE 33) is **GRANTED** and Plaintiff's motion for summary judgment (DE 36) is **DENIED**.

SO ORDERED on March 24, 2017.

 s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge